***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction over this matter, the parties are correctly designated, and the parties were subject to and bound by the North Carolina Workers' Compensation Act at the time of the alleged injury.
2. An employment relationship existed between the parties at the time of the alleged injury.
3. As of the hearing before the Deputy Commissioner, Plaintiff was 55 years old and resided in Fuquay-Varina, North Carolina.
4. Defendant-Employer, a retirement community located in Fuquay-Varina, employed Plaintiff as a registered nurse. Plaintiff held the title of weekend night supervisor. Plaintiff began employment with Defendant-Employer on December 11, 2001.
5. Plaintiff earned $17.50 per hour with Defendant-Employer and was a full-time employee with benefits. Plaintiff alleges that her average weekly wage was $560.00 at the time of the injury, yielding a compensation rate of $373.33.
6. On August 11, 2002, Plaintiff slipped in a puddle of urine on the floor and caught herself with her right arm. As a result, Plaintiff sustained injuries to her right shoulder and arm. Plaintiff is right-hand dominant.
7. Defendants accepted Plaintiff's August 11, 2002 work injury as compensable via a Form 60, and continue to pay indemnity and medical benefits.
8. Plaintiff last worked for Defendant-Employer on or about September 3, 2002. Plaintiff did not return to any employment after that date. *Page 3 
9. Plaintiff initially presented for treatment to Accent Urgent Care After Hours Pediatrics in Fuquay-Varina, where she received a referral to Dr. Paul Oskar Schricker, an orthopaedist, who treated her from September 2002 through October 2002.
10. Plaintiff then received a referral to Dr. Scott Steven Sanitate, a pain medicine specialist, who treated her from November 2002 through January 2003.
11. Plaintiff then received treatment from Dr. George Hadley Calloway, an orthopaedist, from February 2003 through April 2003. Dr. Calloway released Plaintiff from his care with permanent restrictions including occasional lifting as much as 20 pounds.
12. In June 2003, Plaintiff underwent an independent medical examination with Dr. Robert William Elkins, an orthopaedist. Dr. Elkins restricted Plaintiff to no work with her right upper extremity. Dr. Elkins also evaluated Plaintiff in November 2007.
13. In September 2003, Dr. Steven Mitchell Freedman, a neurologist, treated Plaintiff.
14. In October 2003, Dr. Erhan Cemil Atasoy, an anesthesiologist, began treating Plaintiff. Dr. Atasoy provided Plaintiff with pain management and other treatment options. As of the date of the hearing before the Deputy Commissioner, Dr. Atasoy last saw Plaintiff in September 2005.
15. In November 2003, Dr. James Ernest Bellard, a psychiatrist, began treating Plaintiff. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to see Dr. Bellard on a monthly basis, as well as a counselor in his office on a weekly basis, and Defendants were paying for the treatment related to her August 11, 2002 work injury with Dr. Bellard.
16. In January 2004 and August 2004, Dr. Lewis Henry Stocks, III, a general surgeon, saw Plaintiff in order to evaluate her for possible surgical treatment. *Page 4 
17. On October 7, 2004 and December 12, 2005, Dr. Thomas Kern Carlton, III, a pain management specialist, saw Plaintiff.
18. In January 2005, Dr. Mark LeFebvre began providing Plaintiff biofeedback therapy.
19. In September 2002, Plaintiff began attending physical therapy at Hands On Physical Therapy in Fuquay-Varina, with the exception of a 12-month period from December 2002 through December 2003.
20. Plaintiff sought treatment for subsequent left-sided injuries from Fuquay Urgent Care and Family Clinic in Fuquay-Varina, and with Dr. Mark Anthony Curzan, an orthopaedist.
21. On October 9, 2006, Plaintiff participated in the Prevail Program at Carolina Back Institute in Cary, North Carolina. Plaintiff completed the Prevail Program on November 9, 2007.
22. From August 2005 through January 2007, Plaintiff received vocational rehabilitation services from Mr. John P. McGregor, M.S., C.D.M.S., C.V.E., a vocational rehabilitation counselor. Beginning in May 2007, Mr. Alexander Hickman Bland, C.R.P., a vocational rehabilitation counselor, began providing Plaintiff's vocational rehabilitation services.
23. The parties further stipulate that the issue regarding Plaintiff undergoing an independent psychological examination with Dr. John Frank Warren, III is now resolved by way of compromise between the parties. In exchange for Plaintiff undergoing an independent psychological examination with Dr. Warren, Defendants agree that Plaintiff will not have to attend a pain management program at The Rehab Center, Incorporated in Charlotte, North Carolina.
24. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits: *Page 5 
 a. Stipulated Exhibit One (1) — Pre-trial Agreement;
 b. Stipulated Exhibit Two (2) — North Carolina Industrial Commission forms and filings and Plaintiff's medical records;
 c. Plaintiff's Exhibit One (1) — Correspondence dated February 23, 2006 from Plaintiff to the Deputy Commissioner.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's left-sided injuries sustained as a result of her fall on May 30, 2006 are compensable?
2. Whether Plaintiff is permanently and totally disabled under N.C. Gen. Stat. § 97-29?
3. Whether Plaintiff is entitled to compensation for attendant care, medical equipment, and/or additional medical accommodations as a result of her injuries?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on August 11, 2002 to her right shoulder and arm when she slipped in a puddle of urine on the floor and caught herself with her right arm. Defendants accepted Plaintiff's August 11, 2002 work injury via a Form 60 dated January 3, 2003, which lists her compensation rate as $373.35. Defendants continue to pay *Page 6 
Plaintiff indemnity and medical benefits. Plaintiff last worked for Defendant-Employer on or about September 3, 2002. Plaintiff did not return to any employment after that date.
2. In June 2003 and on November 15, 2007, Plaintiff underwent independent medical examinations with Dr. Robert William Elkins. Dr. Elkins diagnosed Plaintiff as having moderate reflex sympathetic dystrophy, also known a complex regional pain syndrome (RSD/CRPS) of the right upper extremity, mild to moderate RSD/CRPS of the left upper extremity, and probable depression. Dr. Elkins also felt that Plaintiff was possibly malingering.
3. Plaintiff began seeing Dr. James Ernest Bellard, a psychiatrist, in November 2003 on a monthly basis, and Ms. Dana C. Fennell, a nurse practitioner and counselor in Dr. Bellard's office, on a weekly basis. Prior to the hearing before the Deputy Commissioner, Defendants accepted responsibility for Dr. Bellard's treatment related to Plaintiff's August 11, 2002 work injury, and he was the only physician treating her. Dr. Bellard treated Plaintiff for her depression, somatic pain disorder, and RSD/CRPS, and he wrote all of her medication prescriptions related to her August 11, 2002 work injury.
4. Defendants now contend that Plaintiff's treatment and counseling with Dr. Bellard and Ms. Fennell are unrelated to her August 11, 2002 work injury, and seek to end their previously agreed upon responsibility for this treatment and counseling. Defendants rely upon the opinion testimony of Dr. Elkins, as well as Dr. John Frank Warren, III, a psychologist, in order to support their contention that the treatment rendered by Dr. Bellard is unrelated to her August 11, 2002 work injury. Although Dr. Elkins diagnosed Plaintiff with RSD/CRPS and probable depression, both of which are typically treated clinically as psychological disorders, he also recommended that she receive no further treatment for them because her condition is not getting any better, but rather, is getting worse even after years of psychiatric and psychological *Page 7 
treatment. Dr. Warren opined that Plaintiff suffers from a pre-existing personality disorder mixed with histrionic and paranoid features that is unrelated to her August 11, 2002 work injury, and that Dr. Bellard's treatment of Plaintiff is not improving her condition, but is making it worse by providing a platform upon which she can discuss issues unrelated to her work injury and manifest her pre-existing personality disorder. Like Dr. Elkins, Dr. Warren was also of the opinion that Plaintiff should receive no further psychiatric or psychological treatment because such treatment is only making her condition worse, even though he also agreed that Plaintiff suffers from a pain disorder.
5. Dr. Bellard opined that Plaintiff's August 11, 2002 work injury more likely than not caused the severe depression from which she currently suffers, and that but for her work injury, she would not likely have developed depression to the extent that she has. Further, Dr. Bellard was of the opinion that Plaintiff will continue to suffer from depression due to her RSD/CRPS, and that continued psychiatric treatment, psychotherapy, and psychiatric medications are medically necessary in order to prevent her condition from deteriorating. Dr. Bellard explained that from a psychiatric standpoint, Plaintiff's primary problem was the chronic nature of her pain, compounded with the way that this chronic pain changed her life, in that she can no longer work as a nurse or do other things in her personal life that she used to do, which makes her feel as though she is losing part of her identity. Dr. Bellard felt that the psychiatric medications that he prescribed Plaintiff improved her ability to sleep, her energy level, her mood, and her relationships with others.
6. The Full Commission gives greater weight to the opinion testimony of Dr. Bellard with regard to whether Plaintiff's current psychological conditions are related to her August 11, 2002 work injury, and whether she continues to require psychiatric treatment, psychotherapy, *Page 8 
and psychiatric medications for these conditions, over any contrary opinions of Dr. Elkins or Dr. Warren. Dr. Bellard is in the best position to render opinions regarding both the causation of Plaintiff's psychological conditions and her future treatment needs for these conditions, since he has an established relationship with her over many years, and not only treated her psychological conditions, but was also writing all of her medication prescriptions related to her August 11, 2002 work injury and was the only physician treating her as of the hearing before the Deputy Commissioner. Further, both Dr. Elkins's and Dr. Warren's opinions are somewhat inconsistent in that while they acknowledge that Plaintiff has a chronic pain disorder, which by definition involves not only physical but also psychological issues that are unlikely to ever completely or even partially resolve, they also conclude that Plaintiff should not receive any further treatment for such a pain disorder.
7. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's current psychological conditions, including the depression, somatic pain disorder, and RSD/CRPS diagnosed by Dr. Bellard, are related to her August 11, 2002 work injury. The Full Commission further finds that Plaintiff continues to require psychiatric treatment, psychotherapy, and psychiatric medications for these psychological conditions in order to effect a cure, to give relief, and/or to lessen her period of disability.
8. Dr. Bellard testified that after Dr. Erhan Cemil Atasoy, the pain management specialist who was acting as Plaintiff's authorized treating physician, released her from his care, he reluctantly agreed to write Plaintiff's pain medication prescriptions, and only agreed to do so because she had no other physician to write these prescriptions for her. Due to his unease about writing Plaintiff's pain medication prescriptions, Dr. Bellard would only agree to continuing the pain medications as prescribed by Dr. Atasoy, and was unwilling to change them in any way. *Page 9 
Dr. Bellard testified that this was not an ideal situation for Plaintiff, and that he would feel more comfortable if he had another physician working with him on the management of Plaintiff's medications. Dr. Bellard agreed that Dr. Steven Dale Prakken, a psychiatrist who specializes in psychosomatic disorders, would be a referral that he would be willing to make in order to manage Plaintiff's pain medication prescriptions. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff would benefit from a referral to Dr. Prakken for the purpose of evaluating Plaintiff's pain management needs and working with Dr. Bellard in order to manage her pain medication and other prescriptions.
9. On May 30, 2006, Plaintiff's foot slipped out from under her and she fell while getting into a taxi-cab/van in order to attend physical therapy for her August 11, 2002 work injury. Plaintiff landed on her left arm, with her left hand bent back, and her right knee buckling beneath her. Plaintiff felt an immediate onset of pain in her left arm after she fell, and also right arm pain due to the "shaking" of her body from the fall. Despite her fall, Plaintiff still went to her physical therapy appointment, where the notes from this date indicate that Plaintiff complained of twisting her knee and bumping her right extremity.
10. On May 31, 2006, Plaintiff presented to Fuquay Urgent Care and Family Clinic for treatment of the injuries sustained in her fall the previous day. Plaintiff complained of pain in her right leg, lower back, left arm, and throughout her body. Plaintiff received a referral to an orthopaedist.
11. On June 9, 2006, Plaintiff presented to Dr. Mark Anthony Curzan, an orthopaedist. On the intake form Plaintiff completed, she indicated that she injured her legs and left arm while getting into a taxi-cab/van. Dr. Curzan's office note from this visit indicates that Plaintiff's initial complaints related to her left forearm and wrist. Dr. Curzan did not note any *Page 10 
swelling or bruising on Plaintiff's left forearm, and diagnosed a left wrist strain. When Plaintiff returned to Dr. Curzan on July 13, 2006, she reported having swollen, achy joints in her left hand, an itching sensation in her left elbow, left gluteal pain, a burning sensation in her mid-hamstring, left ankle pain with walking, pain on her right side while lying down, pain in her right toe with walking, and a sharp pain in her right knee. On October 10, 2006, Plaintiff again returned to Dr. Curzan and reported experiencing left forearm pain. On that date, Dr. Curzan noted that Plaintiff had bruising on her left forearm with no additional trauma and diagnosed her as having a left wrist contusion.
12. On December 19, 2006, Plaintiff next saw Dr. Curzan, at which time she reported to him that she was experiencing pain and swelling in her left fingers. Radiology of Plaintiff's left hand/fingers revealed mild degenerative changes at the little finger PIP and DIP joint, and mild changes at the ring finger PIP joint. This was the first time that Plaintiff ever reported experiencing left finger pain. Plaintiff did not report to Dr. Curzan any left forearm or bilateral leg pain at this visit. When Plaintiff returned to Dr. Curzan on January 29, 2007, she continued to report experiencing left wrist and finger pain, but no left forearm or bilateral leg pain.
13. At his deposition, Dr. Curzan opined that it was possible that Plaintiff's reports of problems with her left long finger and wrists were exacerbated by the trauma that occurred from the May 30, 2006 fall. Dr. Curzan was also of the opinion that following his initial June 9, 2006 examination of Plaintiff, the focus of her symptoms and complaints changed to her left hand, and that her left forearm symptoms resolved during the course of his treatment of her. When asked, but for the May 30, 2006 fall, would Plaintiff have developed the symptoms that she presented with involving her left fingers, Dr. Curzan could not render an opinion on whether Plaintiff's left finger conditions are related to her fall. *Page 11 
14. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's May 30, 2006 fall while entering a taxi-cab/van for transport to physical therapy for her August 11, 2002 work injury caused her left forearm condition. Therefore, Plaintiff's left forearm condition is a direct and natural consequence of her August 11, 2002 work injury and was unintentional. The Full Commission further finds that Plaintiff's left forearm condition is now resolved, and that her current left finger complaints are not related to her compensable injury.
15. Plaintiff is no longer participating in any type of physical therapy program, pursuant to a Consent Order the parties executed in which Defendants agreed to no longer require Plaintiff to participate in vocational rehabilitation and in exchange, Plaintiff agreed to stop participating in physical therapy.
16. Plaintiff contends that as a result of her August 11, 2002 work injury, her current physical and psychological conditions render her permanently and totally disabled. However, Dr. Curzan and Dr. Atasoy released Plaintiff to return to work with restrictions, as did Dr. George Hadley Calloway, an orthopaedist who treated her in 2003. Dr. Elkins, Dr. Bellard, and Dr. Warren were all of the opinion that returning to some type of work would be beneficial for Plaintiff. Plaintiff also testified that she would like to return to work answering telephones in a medical office with a headset or working as a house sitter. Until recently, Plaintiff was participating in vocational rehabilitation in order to assist her in locating suitable employment within her permanent work restrictions. In addition, Plaintiff testified that she was making her own, independent efforts to locate suitable employment within her permanent work restrictions, and that the prospect of securing employment "excited" her. Despite these efforts, which the *Page 12 
Full Commission finds are reasonable, Plaintiff has yet to locate suitable employment within her permanent work restrictions.
17. The Full Commission finds, based upon the greater weight of the evidence, that based upon Plaintiff's age, education, vocational history, and physical and psychological condition, there is insufficient evidence upon which to find that she is permanently and totally disabled from any employment as a result of her August 11, 2002 work injury. The Full Commission further finds, however, that although Plaintiff is capable of some employment, she has yet to locate suitable employment within her permanent work restrictions, despite reasonable efforts through both vocational rehabilitation and on her own. Thus, the Full Commission finds that Plaintiff remains temporarily and totally disabled from employment.
18. Plaintiff contends that as a result of her August 11, 2002 work injury, her current physical and psychological conditions necessitate the use of either a wheelchair or a motorized scooter. However, Dr. Atasoy opined that he could not advocate for Plaintiff using a wheelchair or a motorized scooter because it would make her more dysfunctional since she would then move and walk less, and not be able to lose weight, which she needed to do. Dr. Curzan opined that Plaintiff would not need a wheelchair or a motorized scooter unless she became totally unable to use her cane with her left hand, and he did not think that Plaintiff was at that point. Dr. Bellard was of the opinion that either a wheelchair or a motorized scooter would be beneficial to Plaintiff. Dr. Bellard felt that use of a motorized scooter would promote getting Plaintiff out of the house more; however, he did not take into consideration the immobility issues raised by Dr. Atasoy. The Full Commission gives greater weight to the opinion testimony of Dr. Atasoy and Dr. Curzan with respect to the issue of Plaintiff's need for either a wheelchair or a motorized scooter over any contrary opinions of Dr. Bellard. Thus, the Full Commission finds, based upon *Page 13 
the greater weight of the evidence, that Plaintiff's current physical and psychological conditions resulting from her August 11, 2002 work injury do not necessitate her use of either a wheelchair or a motorized scooter.
19. Plaintiff contends that as a result of her August 11, 2002 work injury, her current physical and psychological conditions necessitate attendant care. Dr. Bellard was of the opinion that although Plaintiff could use help doing chores around the house, he did not think that she needed someone to attend to any medical issues that she may need in her home, since her husband helps her to keep up with taking medications, and she has no problems with attending her appointments related to her August 11, 2002 work injury. Thus, Dr. Bellard did not think that Plaintiff needed attendant care. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's current physical and psychological conditions resulting from her August 11, 2002 work injury do not necessitate attendant care.
20. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's August 11, 2002 work injury, she is unable to drive herself to her physician and other appointments related to the work injury. Because Dr. Bellard did not think that it was safe for Plaintiff to drive due to her delayed observation and response time, and the fact that both of her arms are not fully functional, he issued her driving restrictions of staying within seven (7) to 10 miles of her home and always being accompanied by another adult when driving. An independent driving examination paid for by Defendants confirmed that these driving restrictions were appropriate. Given these driving restrictions, the Full Commission finds that Plaintiff is unable to attend her physician and other appointments related to her August 11, 2002 work injury without some type of transportation service. Thus, the Full Commission finds that Defendants are responsible for all of Plaintiff's transportation to and from her physician and other *Page 14 
appointments related to her August 11, 2002 work injury, including reimbursement for any out-of-pocket expenses incurred by Plaintiff in connection with such transportation.
21. Plaintiff currently walks with a cane due to an altered gait, claims that her eyes are sensitive to light, that she has memory problems, and that she has tics and spasms related to her August 11, 2002 work injury. Dr. Elkins opined, and the Full Commission so finds, that none of these conditions are related to Plaintiff's August 11, 2002 work injury. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is not entitled to medical compensation related to Plaintiff's complaints of altered gait, light sensitivity, memory problems, or tics and spasms.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on August 11, 2002 to her right upper extremity. N.C. Gen. Stat. § 97-2(6) (2008).
2. Plaintiff's May 30, 2006 fall while entering a taxi-cab/van for transport to physical therapy for her August 11, 2002 work injury caused her left forearm condition. Therefore, Plaintiff's left forearm condition is a direct and natural consequence of her August 11, 2002 work injury and was unintentional. Plaintiff's left forearm condition is now resolved, and her current left finger complaints are not related to her compensable injury. Roper v. J.P. Stevens Co., 65 N.C. App. 69, 74,308 S.E.2d 485, 488 (1983), cert. denied, 310 N.C. 309, 312 S.E.2d 652
(1984); Starr v. Paper Co., 8 N.C. App. 604, 611, 175 S.E.2d 342, 347,cert. denied, *Page 15 277 N.C. 112 (1970). Accordingly, Plaintiff is entitled to medical compensation for the treatment associated with her left forearm condition. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008). Plaintiff's left forearm condition is now resolved, and her current left finger complaints are not related to her compensable injury. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
3. Based upon Plaintiff's age, education, vocational history, and physical and psychological condition, there is insufficient evidence upon which to find that she is permanently and totally disabled from any employment as a result of her August 11, 2002 work injury. N.C. Gen. Stat. § 97-29 (2008); Russell v. Lowes Production Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Although Plaintiff is capable of some employment, she has yet to locate suitable employment within her permanent work restrictions, despite reasonable efforts through both vocational rehabilitation and on her own, thereby satisfying prong two (2) of Russell v. Lowes Product Distribution. Russell, 108 N.C. App. 762,425 S.E.2d 454 (1993). Thus, Plaintiff remains temporarily and totally disabled from employment. N.C. Gen. Stat. § 97-29 (2008).
4. Plaintiff's current psychological conditions, including the depression, somatic pain disorder, and RSD/CRPS diagnosed by Dr. James Ernest Bellard, are related to her August 11, 2002 work injury. Holleyv. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000). Plaintiff continues to require psychiatric treatment, psychotherapy, and psychiatric medications for these psychological conditions in order to effect a cure, to give relief, and/or to lessen her period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008). *Page 16 
5. Plaintiff continues to require pain medication in order to effect a cure, to give relief, and/or to lessen her period of disability. Plaintiff would benefit from a referral to Dr. Steven Dale Prakken for the purpose of evaluating Plaintiff's pain management needs and working with Dr. Bellard in order to manage her pain medication and other prescriptions. Dr. Bellard is authorized to make this referral to Dr. Prakken. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
6. The greater weight of the evidence fails to establish that Plaintiff's current physical and psychological conditions resulting from her August 11, 2002 work injury necessitate her use of either a wheelchair or a motorized scooter. N.C. Gen. Stat. §§ 97-25; 97-25.1
(2008).
7. The greater weight of the evidence fails to establish that Plaintiff's current physical and psychological conditions resulting from her August 11, 2002 work injury necessitate attendant care. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
8. Plaintiff's current physical and psychological conditions resulting from her August 11, 2002 work injury render her unable to drive herself to her physician and other appointments related to the work injury. Because Plaintiff is unable to attend her physician and other appointments related to her August 11, 2002 work injury without some type of transportation service, Defendants are responsible for all of Plaintiff's transportation to and from these appointments, including reimbursement for any out-of-pocket expenses incurred by Plaintiff in connection with such transportation. N.C. Gen. Stat. §§ 97-25; 97-25.1
(2008).
9. The greater weight of the evidence fails to establish that Plaintiff's complaints of altered gait, light sensitivity, memory problems, tics, and spasms are related to her August 11, 2002 work injury. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Youngv. Hickory *Page 17 Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000). Therefore, Plaintiff is not entitled to medical compensation for any of these conditions. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall continue to pay temporary total disability compensation to Plaintiff at the rate of $373.35 per week until further Order of the North Carolina Industrial Commission.
2. Plaintiff's claim for permanent total disability is DENIED.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's August 11, 2002 work injury, including past expenses associated with her left forearm condition which is now resolved and her current psychological conditions, including depression, somatic pain disorder, and RSD/CRPS, a referral to Dr. Steven Dale Prakken for the purpose of evaluating Plaintiff's pain management needs and working with Dr. James Ernest Bellard in order to manage her pain medication and other prescriptions. Defendants shall also pay for all transportation expenses to Plaintiff's physician and other appointments related to the work injury, including reimbursement for any out-of-pocket expenses incurred by Plaintiff in connection with such transportation, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act. *Page 18 
4. Plaintiff's claim for a wheelchair, motorized scooter, and attendant care are DENIED.
5. Plaintiff's claim for medical compensation related to her current gait issues, light sensitivity, memory problems, tics, and spasms are DENIED.
6. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed to Plaintiff and thereafter, every fourth (4th) check from future compensation due Plaintiff.
7. Defendants shall pay the costs of these proceedings.
This the ___ day of June 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ STACI T. MEYER COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1